UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTOINETTE PARDINEK WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:08-CV-2065-G (BD) |
| PROVIDENT LIFE & ACCIDENT | ) | |
| INSURANCE COMPANY, | ) | **ECF** |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiff, Antoinette Pardinek Watson

("Watson" or "the plaintiff"), to remand this case to County Court at Law No. 2 of

Dallas County, Texas, for lack of subject matter jurisdiction under 28 U.S.C.

§ 1332(a).  For the reasons discussed below, the motion is denied.

## I.  BACKGROUND

Provident Life and Accident Insurance Company ("Provident" or "the

defendant") is a Tennessee insurance company which has its principal place of

business in Tennessee.  Notice of Removal ("Notice") at 2.  Provident covered

Watson under a disability income policy that provided benefits in the event of total

disability.  Notice, Exhibit C-1, Plaintiff's Original Petition ("Petition") at 1-2.  On

July 25, 2000, Watson sustained serious injuries in a motor vehicle accident, which

prevented her from working.  *Id.* at 2.  Watson has been a citizen of Texas at the time

of this accident and thereafter.  Notice at 2.  She sustained additional injuries on

April 17, 2006, which she claims have not healed.  Petition at 2.  Provident paid

disability benefits following the accident through October 23, 2007, but has not paid

any benefits since that date.  *Id.*  Watson obtained counsel and made a formal

demand to Provident for payment in a letter dated September 12, 2008 ("demand

letter").  *Id.* at 2-3.

Watson filed suit in County Court at Law No. 2 of Dallas County, Texas, on

October 8, 2008.  *Id.* at 1.  She claimed actual damages for breach of the insurance

contract and bad faith denial of benefits under both the common law and Texas

Insurance Code § 541.060(a)(2)(A).  *Id.* at 3.  In addition, she claimed 18 percent

statutory interest under Texas Insurance Code § 542.060, reasonable attorney's fees

and expenses, pre- and post-judgment interest, costs, and all other relief to which she

is entitled.  *Id.*

Removal to this court was effected on November 19, 2008.  Notice at 1.

Provident filed for removal under 28 U.S.C. § 1441, based on diversity of citizenship

jurisdiction under 28 U.S.C. § 1332(a)(1).  *Id.* at 3.  The following day, Watson filed

this motion to remand, averring that the amount in controversy is not sufficient for

diversity jurisdiction.  Plaintiff's Motion for Remand, and Brief in Support

("Motion") at 1.

## II.  ANALYSIS

### A.  Legal Standard

Title 28 U.S.C. § 1441(a) permits removal of "any civil action brought in a

State Court of which the district courts of the United States have original

jurisdiction."  Under this statute, "[a] defendant may remove a state court action to

federal court only if the action could have originally been filed in the federal court."

*Aaron v. National Union Fire Insurance Company of Pittsburg, Pennsylvania*, 876 F.2d

1157, 1160 (5th Cir. 1989), *cert. denied*, 493 U.S. 1074 (1990) (citations omitted).

Removal jurisdiction must be strictly construed, however, because it "implicates

important federalism concerns."  *Frank v. Bear Stearns & Company*, 128 F.3d 919, 922

(5th Cir. 1997); see also *Willy v. Coastal Corporation*, 855 F.2d 1160, 1164 (5th Cir.

1988).  Therefore, "any doubts concerning removal must be resolved against removal

and in favor of remanding the case back to state court."  *Cross v. Bankers Multiple Line

Insurance Company*, 810 F.Supp. 748, 750 (N.D. Tex. 1992); see also *Shamrock Oil &

Gas Corporation v. Sheets*, 313 U.S. 100, 108-09 (1941); *Healy v. Ratta*, 292 U.S. 263,

270 (1934).  The burden of establishing federal jurisdiction is on the party seeking

removal.  *Frank*, 128 F.3d at 921-22; *Willy*, 855 F.2d at 1164.

There are two principal bases upon which a district court may exercise removal jurisdiction:  (1) the existence of a federal question and (2) complete diversity of citizenship among the parties.  *See* 28 U.S.C. §§ 1331, 1332.  Federal question jurisdiction can be exercised by the court if the case presents any issues "arising under the Constitution, laws, or treaties of the United States."  *See* 28 U.S.C. § 1331.  The court can properly exercise diversity jurisdiction if the parties are of completely diverse citizenship and the case involves an amount in controversy of at least $75,000, exclusive of interests and costs.  *See* 28 U.S.C. § 1332(a).[1]  The defendant asserts only diversity jurisdiction in its notice of removal.  Notice at 3.  In making this assertion, the defendant urges that Watson is a citizen of Texas and Provident is a citizen of Tennessee.  *Id.* at 2.  Because the plaintiff does not contest that the citizenship of the parties is diverse, the only issue before the court is whether the amount in controversy exceeds $75,000, exclusive of interest and costs.

To establish jurisdiction when the plaintiff's state court petition does not allege a specific amount of damages, the removing defendant must prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.  See *Allen v. R & H Oil & Gas Company*, 63 F.3d 1326, 1335 (5th Cir. 1995) (citing *De Aguilar v. Boeing Company*, 11 F.3d 55, 58 (5th Cir. 1993)).  A court may determine

---

[1]       Section 1332 states, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-(1) citizens of different States . . . ."  28 U.S.C. § 1332(a)(1).

that removal is proper if it is facially apparent from the state court petition that the claims are likely for more than $75,000.  See *id.*  If the amount in controversy is not apparent from the face of the petition, the court may rely on facts asserted in the notice of removal or in an affidavit submitted by the removing defendant to support a finding of the requisite amount.  See *id.*  The court must consider all "'summary judgment type evidence.'"  *Manguno v. Prudential Property and Casualty Insurance Company*, 276 F.3d 720, 723 (5th Cir. 2002).

"[O]nce a defendant is able to show that the amount in controversy exceeds the jurisdictional amount, removal is proper, provided plaintiff has not shown that it is legally certain that his recovery will not exceed" the jurisdictional threshold.  *De Aguilar v. Boeing Company*, 47 F.3d 1404, 1412 (5th Cir.), *cert. denied*, 516 U.S. 865 (1995).  The court suggested that the plaintiff could establish this legal certainty by identifying statutes that limit her damages or by filing a "'binding stipulation or affidavit with [her] complaint[].'"  *Id.* (quoting *In re Shell Oil Company*, 970 F.2d 355, 356 (7th Cir. 1992) (per curiam)).

## B.  <u>Analysis</u>

The original petition alleges actual damages for breach of contract and bad faith denial of the plaintiff's claims, statutory interest on those amounts, attorney's fees, interest, and costs.  Petition at 3.  However, it does not specify the amount of damages sought.  Therefore, the amount in controversy is not apparent on its face

and the court must consider other evidence presented by the defendant.  The

defendant argues that claims made in the demand letter, written nearly a month

before suit was filed, should be used to determine the amount in controversy.

Defendant Provident Life and Accident Insurance Company's Response to Plaintiff's

Motion to Remand and Brief in Support ("Response") at 7.  This argument is based

on a Fifth Circuit declaratory judgment case that relied on a pre-suit demand letter.

*St. Paul Reinsurance Company, Ltd. v. Greenberg*, 134 F.3d 1250 (5th Cir. 1998).  In

that case, the complaint for declaratory judgment was filed before the defendants

filed a counter-claim or state court petition, so the court had no evidence other than

the demand letters.  *Id.* at 1254.  However, in this case, Watson filed her petition

before removal, requiring the court to determine the amount in controversy based on

the claims made in the petition.  The court will therefore consider the demand letter

as evidence of the amount of the claims made in the petition, but will not consider

every claim for damages made in the demand letter.  See *Lozano v. Schoellerman*, No.

H-08-3069, 2009 WL 211080, *2 (S.D. Tex. Jan. 28, 2009) (considering a pre-suit

settlement demand letter as evidence of the amount in controversy under a state

court petition that did not allege a specific amount).  The court will also consider the

affidavits submitted by the defendant as further evidence of the amount in

controversy, provided that they offer more than conclusory allegations.  See *Allen*, 63

F.3d at 1335.  The defendant alleges that the amount in controversy is satisfied by

virtue of the claims for actual damages, statutory interest, and attorney's fees.  Notice at 2-3.

1.  *Actual Damages*

The complaint does not allege the amount of benefits owed under the policy. However, the defendant provides an unchallenged affidavit by an employee of Provident setting the alleged amount owed under the policy from October 24, 2007 (the date benefits were first denied) through October 8, 2008 (the date suit was filed) at a total of $47,869.92.  Defendant Provident Life and Accident Insurance Company's Appendix in Support of its Response to Plaintiff's Motion to Remand ("Response Appendix"), Exhibit C, Declaration of Melissa Magner at 6.  This amount is slightly higher than what the demand letter claimed for past due benefits through September 12, 2008.  *Id.*, Exhibit A, letter from James L. Johnson, The Johnson Law Firm, to Melissa Magner, Lead Appeals Specialist, Provident Life and Accident Insurance Company (Sept. 12, 2008) ("Letter") at 2.  Therefore, the court will consider unpaid benefits of $47,869.92 as actual damages to determine the amount in controversy.

The petition claims damages based on two theories of recovery:  (1) breach of contract and (2) bad faith denial of benefits under both the common law and Texas Insurance Code § 541.060(a)(2)(A).  Petition at 3.  The defendant maintains that Watson must have "asserted this bad faith claim for a reason," such as the potential

to receive punitive damages or damages for mental anguish.  Response at 9.  "[T]he

preponderance burden forces the defendant to do more than point to a state law that

*might* allow the plaintiff to recover more than what is pled.  The defendant must

produce evidence that establishes that the actual amount in controversy exceeds [the

jurisdictional threshold]."  *Grant v. Chevron Phillips Chemical Company, L.P.*, 309 F.3d

864, 869 (5th Cir. 2002) (quoting *De Aguilar*, 47 F.3d at 1412) (emphasis in the

original), *cert. denied*, 538 U.S. 945 (2003).  The plaintiff argues that the petition did

not "state a claim for treble damages, mental anguish or punitive damages," and

therefore these amounts should not be considered.  Reply to Defendant's Response to

Plaintiff's Motion to Remand ("Reply") at 2.  To determine the amount in

controversy, however, the court will consider both the claims made and the facts

alleged in the petition that may give rise to other forms of recovery.

The statutory claim for bad faith allows, in addition to actual damages and

attorney's fees, an award of treble damages, at the discretion of the trier of fact, upon

a showing that the defendant acted knowingly.  TEX. INS. CODE ANN. § 541.152

(Vernon 2008).  The statute defines knowingly as "actual awareness of the falsity,

unfairness, or deceptiveness of the act."  *Id.* § 541.002(1).  The petition does not

allege that the defendant had actual awareness that it was acting falsely, unfairly, or

deceptively.  Instead, the petition merely asserts that the denial of the plaintiff's claim

was "without reasonable basis" and that Provident knew of the plaintiff's injuries.

Petition at 3.  The defendant does not maintain that the petition established the elements of the treble damages claim, choosing to rely instead on the claim made in the demand letter.  Response at 7.  Because the amount in controversy is limited to the claims made in the petition, the defendant has not carried its burden of proving that treble damages should be included in the amount in controversy.

Under the common law in Texas, a "bad faith insurance dispute" has a "three-tier framework for measuring damages . . . (1) benefit of the bargain damages for an accompanying breach of contract claim, (2) compensatory damages for the tort of bad faith, and (3) punitive damages for intentional, malicious, fraudulent, or grossly negligent conduct." *Transportation Insurance Company v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994).  The court has already determined the amount under the first tier to be $47,869.92.

Under the second tier, compensatory damages require, in addition to the breach of contract, an independent tort.  *Moriel*, 879 S.W.2d at 17.  This can be shown by proving that the "insurer had no reasonable basis for denying or delaying payment of the claim, and that it knew or should have known that fact." *Id.* at 18. The petition alleges that the claim was denied "without reasonable basis."  Petition at 3.  Furthermore, the petition alleges that Provident knew of Watson's continued disability, at least as early as its receipt of the demand letter, but continued to deny benefits.  *Id.* at 2-3.  A reasonable jury could find that Provident knew or should have

known that there was no reasonable basis for this denial.  Therefore, the petition alleges facts that support a claim for compensation under the tort of bad faith denial of an insurance claim.

The defendant argues that the contractual damages are a good "measuring stick" for the damages under the bad faith claim.  Response at 10.  Therefore, it contends, the total potential liability exceeds $18,500.  *Id.*  The plaintiff does not contest this amount of liability, instead arguing that the petition does not state a claim for additional compensatory damages.  Reply at 10.  Thus, the court does not reach the question of the amount of this claim, leaving it to be determined by the jury.  The other amounts in controversy are sufficiently large that extensive compensatory damages are not necessary to surpass the jurisdictional threshold.

In a federal court, punitive damages can be awarded without being specifically pleaded, as long as the facts pleaded "show that the wrong complained of was 'inflicted with malice, oppression, or other like circumstances,'" *Guillen v. Kuykendall*, 470 F.2d 745, 747 (5th Cir. 1972) (quoting *Alexander v. Jones*, 29 F.Supp. 690 (E.D. Okla. 1939)).  However, the complaint does not allege facts that rise to this level, pleading only that Provident denied the benefits "without reasonable basis."  Petition at 3.  Therefore, punitive damages under the third tier will not be considered in determining the amount in controversy.

2.  *Statutory Interest*

The defendant argues that statutory interest should be included in determining the amount in controversy.  Response at 8.  The plaintiff urges, however,  that section 1332 excludes "interests and costs," and thus statutory interest should not be considered.  Reply at 9.  This claim is based on Texas Insurance Code section 542.060(a), which requires that an insurer who is found liable for a claim under an insurance policy to pay "interest on the amount of the claim at the rate of 18 percent a year as damages," in addition to the amount of the claim and attorney's fees.  TEX. INS. CODE ANN. § 542.060(a) (Vernon 2008).

The Fifth Circuit has held that the amount imposed under the predecessor to this statute should be counted as part of the amount in controversy under section 1332.  *St. Paul*, 134 F.3d at 1255.  This holding was based on the fact that the statute referred to the amount as damages, rather than interest,[2] and had been referred to as a penalty by the Texas Supreme Court.  *Id.*  The plaintiff argues that the addition of the word "interest" in the amended version of the statute should make this holding inapplicable.  Reply at 9.  However, the legislative history of the statute

---

[2]      The text of the repealed statute provided that "In all cases where a claim is made pursuant to a policy of insurance . . ., such insurer shall be liable to pay the holder of the policy . . . , in addition to the amount of the claim, 18 percent per annum of the amount of such claim, as *damages,* together with reasonable attorney fees."  *St. Paul*, 134 F.3d at 1254 n.21 (quoting Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 11.03(a), *repealed by* Act of June 21, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1)).

indicates that the amendment was a "[n]onsubstantive recodification" of the insurance code, with the intent of making the statutes "more accessible . . . without altering their sense, meaning, or effect."  Tex. House Research Org., Bill Analysis, Tex. H.B. 2922, 78th Leg., R.S. (2003).  Given this clear legislative intent, the court finds that the impact of the statute has not changed and the decision in *St. Paul* is controlling.  Therefore, the interest under Texas Insurance Code section 542.060(a) is included in calculating the amount in controversy under section 1332.

The amount of the interest is also in dispute.  The defendant claims that the statutory interest is $8,616.58.[3]  Response at 8.  In contrast, the plaintiff claims that the interest should be calculated for each monthly payment based on the individual payments' due dates, rather than "as a fixed percentage of the total benefits," but does not attempt to calculate the interest under this method.  Reply at 9.  The Texas Supreme Court has held that the penalty applies from the date a claim should have been paid until the date of judgment.  *Republic Underwriters Insurance Company v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427-28 (Tex. 2004).  Therefore, the statutory interest that will be awarded if the plaintiff is successful will be the amount of the claim at 18 percent interest calculated from the due date of each payment until the date of

---

[3]      The response states that the "18% penalty under the Code would equal $18,513.50."  Response at 8.  This appears to be a typographical error.  The rest of the defendant's calculations make sense if the defendant intended to claim that the amount of statutory interest is $8,616.58, which is equal to 18 percent of $47,869.92 (the amount of unpaid benefits).  Thus, the court assumes that this was the defendant's intention.

judgment.  The defendant's calculations are wrong in two respects:  (1) they assume that the entire sum was due on October 24, 2007, rather than a portion being due each month and (2) they include only one year of interest, rather than estimating interest until the date of judgment.  This case is currently set for trial in this court in February 2010.  The court does not have a breakdown of due dates and payment amounts and therefore cannot provide an exact calculation.  However, the court's rough estimate of interest is $15,789.26.[4]

### 3.  *Attorney's Fees*

The parties do not dispute whether attorney's fees must be included as part of the amount in controversy.  Attorney's fees must be included in the calculation of the amount in controversy "[i]f a state statute provides for attorney's fees."  *Manguno*, 276 F.3d at 723.  The petition alleges violations of both prompt payment of the insurance claim under Texas Insurance Code section 542.058(a) and good faith settlement of the claim under section 541.060(a)(2)(A).  Petition at 3.  If Watson prevails on either claim, she will be awarded attorney's fees under section 542.060(a) or section 541.152(a)(1), respectively.  Thus, attorney's fees must be considered part of the amount in controversy.

---

[4]        This estimate is based on several assumptions:  (1) the total amount of the claim is $47,869.92, (2) the monthly payments were equal and were due on the first day of each month, (3) the amounts due in October 2007 and October 2008 were 1/4 of a monthly payment, and (4) the judgment date will be February 1, 2010. The interest is not compounded annually.  *Cater v. United Automobile Association*, 27 S.W.3d 81, 85 (Tex. App.--San Antonio 2000, no pet.).

However, the parties disagree over the measurement of attorney's fees.  The

defendant provided an affidavit from one of its lawyers estimating that the total

attorney's fees will exceed $30,000 if the case goes to trial.  Response Appendix,

Exhibit D, Declaration of Dennis M. Lynch at 3.  The defendant cites a decision from

the Tenth Circuit that included reasonably anticipated attorney's fees.  Response at 9.

 The Tenth Circuit held that it would be unreasonable to hold that a plaintiff who

had incurred $6,854.00 in attorney's fees before filing the complaint would not incur

an additional $2,117.50, the amount necessary to put the case over the jurisdictional

threshold.  *Miera v. Dairyland Insurance Company*, 143 F.3d 1337, 1340 (10th Cir.

1998)).  The plaintiff argues that the amount of attorney's fees that should be

considered are limited to those fees that were incurred to date, citing a decision by

the Seventh Circuit.  Reply at 6.  This Seventh Circuit case held that the amount of

attorney's fees are limited to those incurred before the suit was filed to prevent the

parties from creating federal jurisdiction by purposefully incurring attorney's fees.

*Gardynski-Leschuck v. Ford Motor Company*, 142 F.3d 955, 958 (7th Cir. 1998).

While this issue has not been directly addressed by the Fifth Circuit, it has

referred to the amount in controversy as the defendant's total "potential liability."

*St. Paul*, 134 F.3d at 1255.  The court has found diversity jurisdiction based on

evidence that the aggregate amount of attorney's fees for a class action would total

over $75,000.  *Manguno*, 276 F.3d at 724.  This decision upheld the magistrate

judge's determination that the amount of attorney's fees the court would award after trial, based on a percentage of the total recovery, would exceed $75,000. *Manguno v. Prudential Property and Casualty Insurance Company*, No. Civ. A. 99-903-C-1, 2000 WL 33948947, *4 (M.D. La. Sept. 7, 2000), *aff'd*, 276 F.3d 720 (5th Cir. 2002). Similarly, the court has held that the amount in controversy included "potential attorney's fees" that could be recovered by the representative in a class action based on a statute "'either with mandatory or discretionary language.'" *Grant*, 309 F.3d at 873-74. Furthermore, lower courts in this circuit have used the amount of attorney's fees the plaintiff estimated it would accrue through the end of trial in determining whether the amount in controversy was met for subject matter jurisdiction. *HWJ, Inc. v. Burlington Insurance Company*, 926 F.Supp. 593, 594 (E.D. Tex. 1996). See also *In re Norplant Contraceptive Products Liability Litigation*, 918 F.Supp. 178, 180 (E.D. Tex. 1996). Therefore, the court will follow the holding of the Tenth Circuit and include reasonable attorney's fees in determining the amount in controversy.

The plaintiff's concern that jurisdiction in this case is based on a "knock-down, drag-out fight in discovery" that "driv[es] up attorney's fees" is not warranted. Reply at 6-7. The demand letter included a demand for "$5,000.00 in reasonable attorney's fees to date" on September 12, 2008. Letter at 3. Therefore, the amount in controversy, excluding post-filing attorney's fees, is $68,689.18,[5] which is only

---

[5]     This amount is the sum of unpaid benefits ($47,869.92), estimated

(continued...)

$6,310.83 short of the jurisdictional threshold.  The defendant's attorney's estimate

that the plaintiff  will likely incur over $30,000 in attorney's fees is based on an

estimated hourly rate of $300, which the plaintiff does not contest.  Response

Appendix, Exhibit D, Declaration of Dennis M. Lynch at 3.  At this rate, the plaintiff

will incur the amount required for jurisdiction after only 22 hours spent by her

attorney in preparation of the petition, the motion presently before the court, and all

proceedings leading up to and through trial.  Given the complexity of the case and

amount spent on attorney's fees before the claim was even filed, the court finds that

it is reasonable that the plaintiff will incur more than $6,310.83 in attorney's fees,

without engaging in any effort to increase attorney's fees.

## 4.  *Total Amount in Controversy*

For the reasons stated above, the amount in controversy includes unpaid

benefits of $47,869.92, compensatory damages for the tort of bad faith denial of an

insurance claim, statutory interest of approximately $15,789.26, pre-filing attorney's

fees of $5,000, and reasonable attorney's fees through trial.  The total damages that

can be calculated with some certainty are $68,689.18, which is $6,310.83 short of

the jurisdictional threshold.  The combination of damages for the bad faith claim and

reasonable additional attorney's fees will total more than $6,310.83.  Thus, the

_____

(...continued)
statutory interest ($15,789.26), and pre-filing attorney's fees ($5,000.00).

defendant has met its burden of proving, by a preponderance of evidence, that the amount in controversy exceeds $75,000.

### III.  STIPULATION

After the defendant has met its burden, the plaintiff has the option of showing with legal certainty that her recovery will be less than $75,000.  See *De Aguilar*, 47 F.3d at 1412.  However, the plaintiff has not filed a binding stipulation or affidavit that she will recover less than this amount.  Furthermore, Watson has not identified a statute that limits her recovery.  Therefore, the plaintiff has failed to show, to a legal certainty, that she will recover less than $75,000.

### IV.  CONCLUSION

For the reasons discussed above, the plaintiff's motion to remand to the County Court No. 2 of Dallas County, Texas, for lack of subject matter jurisdiction is **DENIED**.

**SO ORDERED**.

May 22, 2009.

_A. Joe Fish_____

**A. JOE FISH**
**Senior United States District Judge**